UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

Steven Daniel,                                    :

                                                  :   Civ. No.

                            Plaintiff,            :

-against-                                         :      Complaint and Jury Demand

                                                  :

City of New York, Daniel Nigro, Karen Hurwitz,    :

Shenecia Beecher, FDNY, John and Jane Does 1-10.  :

                                                  :

                            Defendants.           :

---------------------------------------------------------------- X

## INTRODUCTION

Plaintiff is a firefighter and practices a religion that requires him to maintain facial hair. He has maintained close-cropped facial hair since he was hired, throughout the FDNY academy, and his entire career as a firefighter with the FDNY. Plaintiff obtained an accommodation based upon his religious beliefs and was granted an accommodation by the Defendants. The accommodation posed no hardship upon Defendants and Plaintiff thrived in his position as a firefighter with his accommodation.

After providing the accommodation, Defendants unilaterally revoked the accommodation and declared that no accommodation would be considered or provided.  Defendants then subjected Plaintiff to adverse employment actions by demoting him and reassigning him to a light duty status where he suffered a loss in pay, status, benefits, and could no longer earn overtime—a significant source of income for firefighters. Additionally, he was taken out of a firehouse and could not be a firefighter. He was relegated to administrative duties in headquarters.

## PRELIMINARY STATEMENT

1.      This is an action to remedy discrimination based on religion pursuant to the provisions of the Title VII, Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights

1

Act of 1991 ("Section 1981"), and pursuant to Article I, § 11 of the New York State Constitution for the violation of their due process and other constitutional rights to be free from racial, gender, and disability discrimination.

2.   Furthermore, this is an action in which the Plaintiff seeks relief for Defendants' violation of his rights, under color of state law, of his rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York.

3.   Plaintiff also complains pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e et. Seq. ("Title VII"), and to remedy violations of the laws of the State and City of New York, based upon diversity and supplemental jurisdiction of this Court, seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by his employer.

## JURISDICTION AND VENUE

4.   Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f) (3), and 28 U.S.C. § 1331 and the Civil Rights Act of 1866 and 1871, which give this Court jurisdiction for each statute, the damages, exclusive of interest and costs in this instance exceed that of all lower courts, and this Court's pendent jurisdiction is also invoked.

5.   The unlawful employment practices alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York, specifically, Brooklyn, NY.

6.   Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

7.   A Right to Sue letter was issued to Plaintiff and Plaintiff files this action within the required time period to do so.

## JURY DEMAND

8.    Plaintiff hereby demands a trial by jury on all issues properly triable thereby.

## PARTIES

9.    Plaintiff is a resident of New York City.

10.   Defendant, The City of New York, is a municipal corporation, incorporated in the State of New York.

11.   Defendant Daniel Nigro is the commissioner for the FDNY and responsible for its policies and practices, particularly the ones complained of herein. Defendant Nigro created and implemented the unlawful policies described herein, including the grooming policy, the refusal to consider any accommodation, refusal to provide an accommodation, and refusal to provide a suitable accommodation that does not result in the demotion of Plaintiff and his removal from the firehouse and being placed on light duty.

12.   Defendant Karen Hurwitz is an employee of the Defendant City of New York and FDNY, and made the decision to revoke Plaintiff's accommodation.

13.   Defendant Shenecia Beecher is an employee of the Defendant City of New York and FDNY, and made the decision to revoke Plaintiff's accommodation.

14.   The City of New York is responsible for the Fire Department of the City of New York ("FDNY"), an agency it maintains, operates, and governs.

15.   FDNY maintains its headquarters in Brooklyn, New York, and has its principal place of business at 9 Metro Tech Center, Brooklyn, New York 11201. FDNY and the City of New York meet all requirements under Title VII and the statutes cited herein and associated law to confer this Court with jurisdiction over this matter.

16. John and Jane Does are individuals who are working for an on behalf of the City of New York and who have participated in the unlawful conduct but whose identities are not yet known.

17. At all relevant times, the City acted through its agency, FDNY, to commit the acts alleged in this Complaint and were responsible for such acts.

18. Defendants John and Jane Does 1-10 work for the FDNY and perpetrated, enabled, and/or participated in the unlawful conduct complained of herein. The identities of these individuals are not yet known at this time but are known to Defendant City of New York.

19. All individual Defendants are sued in their official and individual capacities.

20. Defendants, assisted and/or conspired to and/or acted in concert with and/or did engage in the violations of Plaintiff's Federal, State, and City rights. During all times mentioned herein, the Defendants acted under the color of law to wit, under color of constitution, statutes, ordinances, laws, rules, regulations, policies, customs and usages of the State of New York and/or the City of New York.

## **STATEMENT OF FACTS**

21. Plaintiff is employed by the fire department of the City of New York as a firefighter.

22. Plaintiff is an African American male and practices a religion that requires he maintain facial hair.

23. Plaintiff's faith requires him to maintain facial hair and he maintained facial hair for several years prior to becoming a firefighter.

24. Plaintiff continued to maintain close-cropped facial hair pursuant to his religious beliefs when he was hired by the FDNY and every day since.

25.   At no point throughout his time as an employee of the FDNY did the FDNY require him to be clean shaven.

26.   The FDNY maintains a clean-shave policy which requires firefighters to removal all facial hair.

27.   Plaintiff requested an accommodation based upon his religious practices and was granted an accommodation by the Defendants.

28.   The accommodation was that Plaintiff was allowed to maintain close-cropped facial hair on account of his religious beliefs.

29.   The accommodation was granted in part due to the lack of hardship upon Defendants.

30.   Specifically, Defendants told Plaintiff that the Bureau of Health Services informed the EEO office that he successfully passed the '"mask fit'" test with close-cropped facial hair.

31.   As such, his request for a reasonable accommodation was granted.

32.   A "mask fit" test measures the fit of the facemask on the face, essentially determining whether the seal is satisfactory according to industry standards.

33.   Thereafter, Plaintiff passed this test each and every time it was administered.

34.   Plaintiff was permitted to perform his duties as a firefighter while maintaining his religious beliefs because Defendants' granted him an accommodation to maintain close cropped facial hair on his face, including chin and cheeks, as his faith required.

35.   Plaintiff abided by the accommodation since it was granted.

36.   During this time, Plaintiff excelled as a firefighter, and passed both visual inspections and numerous fit tests.

37.   His accommodation caused no hardship upon Defendant.

38. Defendants Nigro, Hurwitz, and Beecher, without any notice, legitimate reason, or rational basis, unilaterally revoked his accommodation in May 2018, and told Plaintiff that he could no longer maintain any facial hair pursuant to new grooming policies.

39. Plaintiff had to shave his facial hair and violate his religious beliefs in order to be a firefighter.

40. Defendants did not engage in any analysis, consideration, or review of the accommodation.

41. Instead, Defendants announced there would no longer be any exceptions to the clean-shave policy, and no accommodations would be considered.

42. By the FDNY's own metric, Plaintiff could and did perform all of his job functions with the simple accommodation that he was afforded, i.e. having close cropped facial hair.

43. Defendants enacted a policy that prohibited any facial hair other than a mustache. Plaintiff's religious beliefs require him to maintain facile hair on his face, including cheeks, chin and neck.

44. Defendants' policy prohibited any member of the FDNY from maintaining even close-cropped facial hair, targeting those who must maintain some facial hair due to their religious beliefs. There are several of these individuals employed by the FDNY as firefighters who require religious accommodations to the grooming policies.

45. Defendants' prohibition of any amount of facial hair is not reasonably related to any legitimate workplace or governmental interest as it was already proven that having close-cropped facial hair did not interfere with Plaintiff's job responsibilities.

46. There is no rational basis for the Defendants' actions.

47. The accommodation did not pose any hardship upon Defendants.

48. The accommodation also does not present any hazard.

49.   Indeed, the Plaintiff was aptly able to maintain his slight facial hair as an accommodation and perform his job as a firefighter up until the Defendants unilaterally revoked the accommodation.

50.   Furthermore, there were no safety issues, complaints, or incidents related to Plaintiff's accommodation while he was receiving it.

51.   Moreover, there are at least eighteen (18) other firefighters who received accommodations to maintain facial hair for more than a year and there was not one incident involving safety or hardship.

52.   Defendants enacted a policy that accommodations were no longer available, would not be considered, and declared they did not have to consider any requests, and would not do so.

53.   Defendants unreasonably burdened Plaintiff's exercise of his religious beliefs.

54.   Defendants then immediately subjected Plaintiff to several adverse employment actions.

55.   Due to his religious beliefs requiring him to maintain close-cropped facial hair, Defendants demoted Plaintiff and reassigned him to a light duty status where he suffered a loss in pay, title, schedule, compensation, and placed on the termination track.

56.   Plaintiff was disciplined for not complying with Defendants' unlawful polices.

57.   Defendants immediately took Plaintiff out of the firehouse and told him he had no firefighting duties.

58.   Defendants disciplined Plaintiff due to his religious beliefs that they deemed violated their new grooming policy and no exception to it. This included being taken out of a firehouse, made ineligible for overtime, promotions, details, and a significant loss of pay.

59.   Moreover, when placed on light duty, Plaintiff could not do mutuals, also known as 24s, in which all full duty firefighters trade their shifts with other full duty firefighters so that they

each work a full 24 hours, and thereafter each have 3-4 consecutive days off, and in some cases, the rest of the week off. The time off would be used for other employment, family activities, and personal matters for the firefighters.

60. Being able to do mutuals is one of the most important benefits afforded to firefighters in their stressful jobs.

61. By being placed on light duty, Plaintiff was barred from doing mutuals, and had his work schedule changed such that he was no longer in the firehouse, could not work his normal schedule, and would have to work every day at headquarters without consecutive days off as is normally his schedule.

62. Plaintiff also was not permitted to do the job he was hired to do: be a firefighter fighting fires and stationed in a firehouse. Instead, he was regulated to administrative duties in headquarters.

63. Plaintiff trained extensively to be a firefighter, and yet the Defendants removed him from the firehouse and essentially made him an administrative assistant due to his religious beliefs.

64. Defendants ensured that Plaintiff was also no longer eligible for overtime, promotions, details or opportunities to work in other commands.

65. Plaintiff was designated as "light duty employee," meaning an employee who cannot perform the job he was hired to do. This meant that Plaintiff would be on track for termination as someone who cannot do the job for which they were hired.

66. Prior to his demotion and while functioning under the accommodation, Plaintiff earned overtime and maintained his status as an active firefighter. He was stationed in a firehouse and responded to fire scenes and fought fires.

67. Defendants' demoted Plaintiff to a lesser position in both pay and title causing him to lose benefits he otherwise earned prior to the rule change.

68. The Defendants' actions resulted in a material change in the terms and conditions of Plaintiff's employment due to his religious beliefs to maintain facial hair and Defendants' grooming policy that prohibited it and any accommodations to the grooming policy.

69. Plaintiff was no longer permitted to be a firefighter while he was placed on light duty. Plaintiff had to shave to avoid the unlawful actions of the Defendants.

70. Moreover, Plaintiff was placed on the termination track and will eventually be terminated.

71. Defendants refuse to permit any accommodation to this unlawful policy, and will not even consider a request for accommodation.

72. Defendants' policy of refusing to even entertain or consider a request of an accommodation is in and of itself unlawful as they have a duty and responsibility to consider and provide accommodations to avoid constitutional violations and comply with the Federal, State, and City law.

73. Plaintiff was unlawfully forced to choose between earning a living as a firefighter and his religious beliefs.

74. Plaintiff is qualified for his position as a firefighter and Defendants have never raised any concerns with his performance.

75. By revoking Plaintiff's accommodation, refusing to consider any accommodation, taking away his salary and benefits, and demoting him, Defendants unequivocally targeted Plaintiff for his religious beliefs.

76. Indeed, given that Defendants knew Plaintiff and others sought (and obtained) a religious accommodation, they also knew that the policies complained of herein would directly target these individuals and single them out.

77. By implementing these policies, Defendants knew that those who required religious accommodations would suffer the adverse effects of these policies.

78. Indeed, Defendant's actions have the effect of removing Plaintiff and countless others who seek religious accommodations from the FDNY.

79. The refusal to provide religious accommodation directly and deliberately affects many members of the FDNY who are required to maintain facial hair on account of their religious beliefs.

80. The actions of the FDNY are clearly aimed at purposeful discrimination against anyone who seeks and/or needs a religious accommodation to have *any* amount facial hair. The FDNY's policy and its application will lead to the termination of those whose faith requires them to maintain close cropped facial hair.

81. What is more, the Defendants' policies result in those who need a religious accommodation to either be terminated or comply with the unlawful policy and violate their faith—a choice that the Plaintiff and numerous others similarly situated have to make.

82. Plaintiff suffered an adverse and material change in his working conditions as a result of Defendants' unlawful policy. This includes being removed from a firehouse, being placed on light duty, having pay and benefits taken away, and placed on the termination track where he will be terminated if he remains on light duty due to his religious practices.

83. The loss of pay and benefits results in Plaintiff losing thousands of dollars in wages, benefits, and opportunity.

84. Moreover, being placed on light duty stalled Plaintiff's career prospects, prevented him from advancing in rank and rendered him ineligible for coveted assignments, preferred and prestigious details, and promotional opportunities.

## COUNT I-DISCRIMINATION UNDER TITLE VII

85. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

86. Plaintiff has a bona fide religious belief that conflict with an employment requirement. Plaintiff practices a religion that requires that men maintain facial hair on their cheeks and neck.

87. Defendants maintain a clean-shave policy whereby Plaintiff must shave with a razor and have no facial hair.  Defendants also maintain a policy that there are no exceptions to the policy, no accommodations will be considered, and persons effected by the grooming policy are not permitted to seek accommodations.

88. Plaintiff informed Defendants of his religious beliefs policy when he requested an accommodation to their clean-shave policy.

89. As a result of his failure to comply with the conflicting employment requirement, Plaintiff was disciplined and suffered adverse employment actions as described above.

90. Defendants could reasonably accommodate Plaintiff, and did so for nearly several years, without sustaining any hardship.

91. Requiring firefighters to be clean shaven is not a bona fide occupational qualification as the purpose is to ensure that firefighters pass what is known as a "fit test."

92. The "fit test" refers to a test the FDNY administers to gauge the actual fit of the oxygen masks on the face of a firefighter.

93. If the mask fits properly, then oxygen would not escape from the mask and the test-taker would pass the fit test.

94. Plaintiff passed the fit test on several occasions while maintaining close-cropped facial hair pursuant to the reasonable accommodation afforded to him by Defendants.

95. Defendant City of New York, by and through the FDNY, discriminated against Plaintiff on the account of his religion.

96. Defendants engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff as set forth herein.

97. Plaintiff's sincerely held religious beliefs required him to maintain facial hair and Defendants subjected Plaintiff to adverse employment actions on account of his religious practices as more fully described herein.

98. Defendants refused to provide Plaintiff a religious accommodation or consider an accommodation in violation of Title VII.

99. The Defendants have an obligation to meaningfully and legitimately consider Plaintiff's request for an accommodation. Instead, Defendants refuse to consider, investigate, or meaningfully entertain Plaintiff's accommodation.

100. Plaintiff was otherwise qualified and did perform the essential functions of the job with the reasonable accommodations.

101. Upon having his accommodation revoked, Plaintiff was no longer permitted to be a firefighter.

102. Defendants placed Plaintiff on light duty, which precluded him from earing overtime, and relegated him to administrative duties that are vastly different from their duties as an active duty firefighter.

103.    As an active duty firefighter, Plaintiff was stationed at a firehouse, responded to fires and emergency calls, earned overtime pay, and worked on alternating 24-hour shifts.

104.    Upon being placed on light duty, however, Plaintiff was relegated to everyday work schedules in which he conducted administrative duties outside of a firehouse and could not respond to emergencies and calls for service.

105.    Moreover, while on light duty, Plaintiff lost wages, including 401k and other compensation benefits, and was prevented from seeking details to work in other parts of the commands that require full duty status.

106. Plaintiff was also denied promotional opportunities, status, rank and ability to advance his career as a result of the light duty designation and deeming Plaintiff unfit for duty because he is required to maintain close-cropped facial hair by his faith.

107. Additionally, Defendants' policy of not accepting or reviewing requests of accommodation violates Federal Law.

108. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and monetary damages.

## COUNT II-DISCRIMINATION UNDER THE NEW YORK CITY HRL

109. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

110. The Administrative Code of City of New York § 8-107 prohibits discrimination based upon religion.

111. Defendants engaged in unlawful discriminatory practices in violation of New York City Human Rights Law by creating and maintaining discriminatory working conditions, refusing to provide, maintain, and consider an accommodation, and otherwise discriminating against the Plaintiff as set forth herein.

112. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and monetary damages.

## COUNT III-DISCRIMINATION UNDER NEW YORK STATE LAW

113. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

114. New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristic, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms,  conditions or privileges of employment."  NYS Executive Law § 296.

115. Defendants engaged in unlawful discriminatory practices by discriminating against the Plaintiff as set forth herein based upon his religion.

116. Plaintiff hereby make claims against Defendants under all of the applicable paragraphs of Executive Law Section 296 and NYS law.

117. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and monetary damages.

## COUNT IV-VIOLATION OF RIGHTS UNDER 42 U.S.C. §1983

118. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

119. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

14

120. In committing the acts of discrimination complained of herein, the Defendants City of New York, Nigro, Hurwitz, and Beecher acted jointly and under color of state law to deprive Plaintiff of his clearly established constitutionally protected rights under the First, and Fourteenth Amendment of the United States Constitution to freely practice his faith, to be free from discrimination, and to be free from unequal protection based upon his religion.

121. The conduct of Defendants City of New York, Nigro, Hurwitz, and Beecher, on prohibiting any amount of facial hair, imposed an unreasonable burden on Plaintiff's religious practices and violates the First Amendment and Free Exercise Clause.

122. Additionally, Defendants' conduct violates the Equal Protection Clause as Plaintiff is being treated less favorably on the basis of his religious beliefs.

123. Plaintiff in this action is a citizen of the United States and a person under Section 1983.

124. Defendants violated the above statute by violating Plaintiff's Constitutional rights through multiple acts of discrimination in violation of Plaintiff's rights.

125. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff's suffered mental, emotional, and monetary damages.

## COUNT V-*Monell* Claim – 42 U.S.C. § 1983

126. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein

127. The policies and practices of the Defendant City/FDNY as described herein, namely the clean shave policy, including the refusal to consider an accommodation, was in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation of and under the supervisory authority of Defendant City of New York and its agency, the FDNY, and its decision makers, including Defendant Nigro.

128. Defendants City of New York and FDNY, by their policy – through its agents, servants and employees, authorized, sanctioned and/or ratified the individual wrongful acts of Defendants and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

129. The City of New York's grooming policy and its implementation is an unlawful policy, custom, and practice that violated Plaintiff's religious rights guaranteed under the First Amendment and his equal protection rights guaranteed by the Fourteenth Amendment.

130. The actions of Defendants resulted from and were taken pursuant to the *de facto* policies and/or well-settled and widespread customs and practices of the City, which are implemented by members of the FDNY.

131. The relevant policies, customs and practices with regard to the religious discrimination and unequal protection perpetrated against Plaintiff are pursuant to explicit polices enacted, maintained, and executed by Defendant Nigro as the highest-ranking authority in the FDNY and is the chief policy maker.

132. These policies directly targeted Plaintiff and others whose faith requires them to maintain facial hair. Indeed, Defendant City of New York and the individual Defendants knew that Plaintiff and others sought religious accommodations, and thus knew that by enacting the policies complained of herein, these individuals would be targeted in violation of the equal protection clause and the First Amendment.

133. In addition, there was no exception or accommodation in relation to these unlawful policies, as required by law.

134. These offending policies include, but are not limited to, prohibiting any amount of facial hair for any reason, refusing to provide an accommodation, refusing to consider an

accommodation, and unduly burdening the religious expression and practices of Plaintiff and others similarly situated.

135. Defendant City of New York knew or should have known that the acts alleged herein would deprive Plaintiff of his rights in violation of the First and Fourteenth Amendments to the United States Constitution.

136. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and monetary damages.

## COUNT VI-DISPARATE IMPACT, DISCRIMINATION UNDER THE CIVIL RIGHTS ACT, TITLE VII, NYSHRL, AND NYCHRL

137. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

138. Defendants' policies, while seemingly neutral on their face, have the effect of discriminating against people whose religious practices requires facial hair, such as the Plaintiff, and including those who practice the Islamic, Christian, and Judaic faiths.

139. The policy complained of herein seems neutral on its facie. i.e. a prohibition on any amount of facial hair, impacts those that are required to maintain some facial hair on their face, including cheeks and chin, such as Plaintiff.

140. Plaintiff's religious beliefs and that of several others who requested religious accommodations from the City of New York are violated by the seemingly neutral policy.

141. While Defendants are in possession of the actual number of those who have sought religious accommodations, Plaintiff is aware of several others who have sought religious accommodation to the grooming policy.

142. Several firefighters and other members of the FDNY require a religious accommodation to maintain close-cropped facial hair.

143. Moreover, because of his religious practices, Plaintiff and others who must maintain some facial hair were demoted, lost wages and benefits, suffered a reduced status of being placed on light duty, and were placed on the termination track where they will eventually lose their jobs.

144. Firefighters at the FDNY who require some facial hair due to their religious beliefs cannot comply with the policy without violating their beliefs. Indeed, the Plaintiff and others similarly situated were told they would eventually be terminated.

145. Moreover, if they do not comply with the policy, which would violate their beliefs, they are subject to termination.

146. The impact of the Defendants' unlawful policy is a material change in the terms and conditions of Plaintiff's employment and that of those who cannot comply with the unlawful policy, including but not limited to, being placed on light duty and the consequences thereof as explained herein, a substantial change in wage, benefits, earning capacity (to the tune of at least $30,000), loss of status and title, and caused them to be placed on the termination track.

147. Defendants' polices, should the Court find them to be neutral on their face and without discriminatory intent, nonetheless have a disparate impact upon the many members of the Fire Department who are required by their faiths to maintain close cropped facial hair.

148. Defendants' policies, however neutral appearing, thus have a disparate impact upon those whose religion requires them to maintain some facial hair, such as the Plaintiff.

149. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and monetary damages.

## COUNT VII-FAILURE TO ACCOMMODATE UNDER TITLE VII, NYSHRL, NYCHRL, AND CONSTITUTION

150. Plaintiff incorporates all paragraphs of this Complaint as if fully restated here.

151. Defendants had an obligation to offer Plaintiff a reasonable accommodation in light of his religious beliefs.

152. Defendants refused to consider an accommodation for Plaintiff. Defendants also refused to provide Plaintiff a reasonable accommodation.

153. Instead, Defendants decided to take several adverse employment actions against Plaintiff as more fully described herein.

154. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and monetary damages.

## VIII-DISPARATE TREATMENT, DISCRIMINATION UNDER THE CIVIL RIGHTS ACT, TITLE VII, NYSHRL, NYCHRL, AND CONSTITUTIONAL LAW UNDER EQUAL PROTECTION

155. Plaintiff incorporates all paragraphs of this Complaint as if fully restated herein.

156. Several firefighters and members of the FDNY require a religious accommodation to maintain short facial hair.

157. Plaintiff and others who must maintain some facial hair because of religious obligations were demoted, taken out of the firehouse, could not be firefighters, lost wages and benefits, suffered a reduced status of being placed on light duty, and were placed on the termination track.

158. The placement of Plaintiff on light duty is an adverse employment action as there was a material change in his job title and salary. Defendants' change in status of his employment is solely due to his religious beliefs.

159. There are several other firefighters whose religious beliefs require them to maintain facial hair that are impacted by the Defendants' unlawful policy.

160. These individuals include several individuals who practice the Islamic and Judaic faiths.

161. Furthermore, the Defendants' policies also unlawfully have a disparate impact upon those who must maintain some facial hair due to their religious beliefs.

162. These policies intentionally treat Plaintiff and others similarly situated differently on account of their religious observations.

163. Defendants know that this policy will adversely affect those who must maintain some facial hair due to religious observance as Defendants granted many accommodations based upon the same grounds for several years before unilaterally revoking it.

164. Defendants knew that several firefighters, including Plaintiff, required religious accommodations because they sought them and were granted accommodations. As such, by instilling the policies complained of herein, the Defendants knew they would be targeting those firefighters whose religious beliefs required them to maintain facial hair.

165. Defendants' policies do not provide accommodations or even consideration of an accommodation is tantamount to disparate treatment and intentional discrimination as they know many of their members will suffer adverse employment actions including termination as a result of these unlawful policies.

166. Defendants are deliberately targeting those whose faith requires them to maintain facial hair.

167. These individuals, including Plaintiff, are being targeted by the Defendants' policy that intentionally discriminates against them.

168. Plaintiff, and others who require religious accommodations to maintain close-cropped facial hair, are being directly targeted and are being treated differently than others.

169. Plaintiff and others impacted by Defendant's unlawful policy are qualified for their jobs and simply require an accommodation that poses no hardship on Defendants and that Defendants have previously provided on a regular and system wide basis.

170. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and monetary damages.

### COUNT IX- INDIVIDUAL LIABILITY UNDER NYSHRL AND NYCHRL

171. Plaintiff incorporates all paragraphs of this Complaint as if fully restated here.

172. Defendants City of New York, Nigro, Hurwitz, and Beecher actually participated in the unlawful discrimination and therefore aided and abetted the discriminatory conduct alleged herein.

173. Defendants Hurwitz, Beecher, Nigro and City of New York worked with each other to discriminate against the Plaintiff as described herein.

174. Defendants Hurwitz, Beecher, Nigro, and City of New York created the unlawful policies complained of herein.

175. Defendants Hurwitz and Beecher conducted visual inspections of each Plaintiff to ensure compliance with the policy.

176. Defendants Hurwitz and Beecher demanded Plaintiff shave his facial hair, and told Plaintiff that his accommodation was being revoked, no accommodation would be considered, and that he was going on light duty due to his religious beliefs.

177. Defendants Hurwitz and Beecher refused to review or acknowledge Plaintiff's accommodations although they were presented with said notice of accommodation to them at the time of inspection.

178. Defendants Hurwitz and Beecher then wrote Plaintiff up for non-compliance and violations of the clean shave policy. He was immediately demoted to light duty because of his religious belief to maintain close cropped facial hair.

179. Defendants Nigro, Hurwitz and Beecher enabled each other's violations and did more than carry out personnel decisions made by others.

180. Specifically, Defendants Hurwitz and Beecher determined whether Plaintiff's were in violation of the FDNY's Clean Shave policy during visual inspection each morning.

181. More specifically, Defendants Nigro, Hurwitz, and Beecher created and implemented the unlawful grooming policy, including but not limited to unilaterally revoking the accommodations without any legitimate reason, with the intent and impact of discriminating against Plaintiff. Also, they personally made the decision to provide no accommodation.

182. Defendants' conduct had the intent and effect of discriminating against Plaintiff on account of his religion.

183. Defendants knew that by placing Plaintiff on light duty as a result of his protected status and the discriminatory intent and/or effect of the aforementioned policies, customs and practices; Plaintiff would, and did, suffer the adverse employment actions pled herein.

184. The adverse employment actions suffered by Plaintiff, included being placed on the termination track, losing income, benefits, being reassigned from the firehouse to administrative duties in headquarters, being prohibited from earing overtime, not being able to the job he trained many months for (being a firefighter), and no mutuals.

185. Defendants City of New York, Nigro, Hurwitz, and Beecher directly created the polices and customs complained of herein. Said Defendants also directed their unlawful implementation notwithstanding the fact that their actions violated the law.

186. As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered mental, emotional, and monetary damages.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all Defendants:

(a) A declaration that Defendants violated Plaintiff's rights as described herein;

(b) a declaration that the Defendants' policies are unlawful;

(c) accommodation for Plaintiff and others similarly situated;

(d) an injunction prohibiting further discrimination and the violation of rights described herein and enforcing the contested policies;

(e) compensatory, consequential, and special damages;

(f) punitive damages against the individual Defendants;

(g) damages for emotional distress, lost wages, back pay, front pay, statutory damages, medical expenses, interest, and costs of suit;

(h) reinstating Plaintiff's accommodation and status back to a firehouse;

(i) ordering Defendants to provide accommodations to the grooming policy;

(j) appointment of a receiver/monitor to ensure Defendants' compliance with the laws and to ensure that the offending policies are changes, inhibited, and forbidden;

(k) reasonable attorneys' fees and costs pursuant; and

(l) such other and further relief as appears just and proper.

Dated: New York, NY
      August 26, 2019

Respectfully submitted,
s/ Aymen A. Aboushi, Esq.
Aymen A. Aboushi, Esq.
Tahanie A. Aboushi, Esq.
The Aboushi Law Firm
1441 Broadway, Fifth Floor
New York, N.Y. 10018
Tel: 212.391.8500
Fax: 212.391.8508